IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re: <br><br> AICO RECREATIONAL PROPERTIES, LLC, d/b/a Indian Springs Resort, <br><br> Debtor <br><br>――――――――――――――――― <br><br> TERRY ANDERSEN and ROSANNA ANDERSEN, <br><br> Appellants, <br><br> v. <br><br> EVERETT W. McKINNEY and ARDIS McKINNEY; INDIAN SPRINGS NATATORIUM;* D.M. THORNHILL and SHIRLEY THORNHILL;* W. EVERETT ELLS and MARGIE ELLS;* GLENN C. MAHONEY;* and R. SAM HOPKINS, Trustee, <br><br> Appellees. | Case No. CV04-338-E-BLW <br><br> MEMORANDUM DECISION <br><br><br><br><br><br><br><br><br> On Appeal From <br> United States Bankruptcy Court <br> District of Idaho <br> Hon. Terry L. Myers, Bankruptcy Judge <br> Case No. 01-40539 |

Appellants Terry and Rosanna Andersen ("Andersens") have appealed from the judgment of the bankruptcy court entered on May 14, 2004, granting the motion of R. Sam Hopkins, Trustee of the Bankruptcy Estate of AICO Recreational Properties, LLC. ("Trustee") to abandon certain real and personal property and granting possession of that property to appellees Everett W. and Ardis McKinney ("McKinneys"), D.M. and Shirley Thornhill ("Thornhills"), W. Everett and Margie Ells ("Ells"), and Glenn C. Mahoney ("Mahoney").

―――――――――――――

* Party has not made an appearance in this appeal; included for noticing purposes only.

The court having reviewed the briefs, motion to dismiss filed by the trustee, and record on appeal has determined that oral argument would not be helpful in the determination of this case and the parties have not requested oral argument.[1] The matter is submitted for decision on the briefs.

## Background/Jurisdiction

On March 29, 2001, AICO Recreational Properties filed a voluntary petition under chapter 11 of the Code.[2] On May 16, 2003, the case was converted to a case under chapter 7 of the Code and R. Sam Hopkins was appointed trustee.

On March 16, 2004, the trustee filed a motion to abandon the Indian Springs Resort property located in Power County, Idaho. The motion was opposed by various interested parties, including appellant Rosanna Andersen. On April 15, 2004, following an evidentiary hearing on the motion and objections, the court granted the trustee's motion to abandon the property and set for further hearing on May 14, 2004, the issue of the party entitled to possession. The McKinneys, Thornhills, Ells, and Mahoney all filed position papers asserting claims to various parts of the real and personal property. The Andersens filed three separate documents claiming an interest: one jointly on behalf of themselves and Recreational Properties A & B claiming an interest in the real property; one separately by Terry Andersen claiming a construction lien on the real property; and one separately by Rosanna Andersen claiming a community property interest in personal property and chattels.

After an evidentiary hearing on May 14, 2004, the bankruptcy court entered its order authorizing abandonment of the property and, finding the party had established a *prima facie* possessory interest, granted possession as follows:

(1) real property, improvements and fixtures to the McKinneys;

(2) personal property (excluding mobile homes) to the Thornhills;

(3) a 1973 Van Dyke mobile home to the Ells; and

---

[1] *See* FED. R. BANK. P. 8012

[2] Unless otherwise noted, all references to the Code or sections are to the Bankruptcy Code, title 11, United States Code and all references to Rules are to the Federal Rules of Bankruptcy Procedure.

(4) a 1997 Fleetwood Brookfield Ltd. Mobile home to Mahoney.

The order specifically disclaimed that the court was, directly or indirectly, making any determination as to the nature, extent, or priority of any party's right, title or interest in or to the abandoned property or adjudicating or resolving any claims between the parties. The parties were left free to assert, each as against any of the others, any claim(s) the party may have as to the abandoned property under applicable nonbankruptcy law and judicial procedures.

On May 24, 2004, the Andersens timely filed a notice of appeal from the May 14, 2004, order. On June 7, 2004, the trustee timely filed an objection to the referral of the appeal to the Bankruptcy Appellate Panel and on June 9, 2004, the McKinneys timely filed an identical objection. On June 25, 2004, the appeal was transferred to this court. This court has jurisdiction under 28 U.S.C. §158(a)(1), (c)(1)(A).

## ISSUES ON APPEAL

In their Notice of Appeal, the Andersens listed five errors, in the Designation of Issues on Appeal listed 12, and in their principal brief 14. In reviewing the various errors alleged, the court concludes that in reality there are but two errors raised that are properly before this court:[3] that the McKinneys had established a *prima facie* possessory interest in the real property, improvements and fixtures (E and G); and that the Thornhills had established a *prima facie* possessory interest in the personal property (F and K).

This court on appeal may address only those issues that fairly arise from the order from which the appeal was taken. Several issues attempted to be raised by the Andersens relate to orders entered by the bankruptcy court prior to the entry of the abandonment order from which this appeal was taken. Any objection to them has either been resolved by an earlier appeal or has been waived by a failure to timely appeal. Those orders, being final, bind the parties and all issues that could have been raised pertaining to that order have *res judicata* effect and may not be relitigated.[4] In this

---

[3] The letter in parentheses corresponds to the letter in Appellant's Brief.

[4] See, e.g., Enewally v. Washington Mutual Bank (In re Enwally), 368 F.3d 1165, 1172–73 (9th Cir.) cert. denied 125 S.Ct. 669 (2004); Great Lakes Higher Education Corp. v. Pardee (In re Pardee), 193 F.3d 1083, 1086–87 (9th Cir. 1999).

category fall: denial of confirmation of the second amended plan (D); and order converting the case from a case under chapter 11 to a case under chapter 7 (J).

The Andersens are not the real parties in interest, lack prudential standing[5] and may not appear on behalf of the real parties in interest before this court[6] on: denial of the debtor's motion for a new trial on the McKinneys' motion for relief from stay (A, B, and C); failure to join Recreational Properties A & B as an indispensable party (H);[7] ignoring or overlooking the debtor's request for a release of the inventory and accounting (L);[8] and denial of debtor's request to instruct the U.S. Postal to release mail to addressees (M).[9]

The Andersens also complain that the trustee wrongfully evicted them from their personal residence (N) and erred in dismissing the Idaho State Court action (I). The record is devoid of action having been taken by the bankruptcy court on these issues; the Andersens point to no order in the record and the court is unable to find any such order from which an appeal was or could have been taken. This court, therefore, lacks jurisdiction to address these two issues on this appeal.

## STANDARD OF REVIEW

Legal conclusions and mixed questions of fact and law are reviewed *de novo* while factual determinations are reviewed for clear error.[10] "A finding is 'clearly erroneous' when

---

[5] *See Dunmore v. United States*, 368 F.3d 1107, 1112 (9th Cir.2004).

[6] D. ID CIV. R 83.4(d) (requiring that parties, other than individuals, may only appear before this court through counsel).

[7] The record of the bankruptcy court (docket 232) indicates the denial of this motion was without prejudice; but provided that Recreational Properties must appear through counsel. [LBR 9010-1(e)(3) specifically requires a partnership to be represented by counsel.]

[8] The Andersens do not point to, nor has the court been able to find, any place in the record where the bankruptcy court ruled on this request. There is, therefore, no final order to support the appellate jurisdiction of this court.

[9] The court notes that although the Andersens individually may have had a personal interest in the matter, which perhaps would create prudential standing, the Andersens do not point to, nor has the court been able to find, any place in the record where the bankruptcy court ruled on this request. There is, therefore, no final order that would support the exercise of appellate jurisdiction by this court.

[10] *Beaupied v. Chang (In re Chang)*, 163 F.3d 1138, 1140 (9th Cir. 1998).

although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[11]

## DECISION

A. *Dismissal.*

The McKinneys suggest that the appeal should be dismissed for the failure of the appellants to comply with the rules, specifically Rule 8006 and General Order 38 issued by this court. The court declines to do so for several reasons. First, the court itself was partially at fault in that it appears the copy of General Order 38 was not attached to the order sent to the parties on August 16, 2004. This was not sent until January 31, 2005, together with the order setting the briefing schedule.

Second, the Andersens filed a statement of issues, designation of the record on appeal and copies of the record on August 25, 2004, within 10 days of the August 16 order. On September 7, 2004, the McKinneys filed a designation of additional items to be included in the record on appeal. The court agrees that the Andersens did not strictly comply with the requirement that the excerpts be filed with the appellants' opening brief; appellants filed the excerpts earlier. Neither appellees nor the court are prejudiced by this earlier filing and to require the Andersens to refile the same documents with their opening brief would serve no useful purpose.

The Andersens are proceeding *pro se*, and it is the policy of courts to grant *pro se* litigants a certain degree of latitude in complying with procedural requirements. This is particularly true where, as in this case, the opposing party has not shown any prejudice as a result of the failure of the Andersens to strictly comply with the time requirements of the rules. Indeed, the McKinneys have exhibited a degree of dilatoriness in this matter by not seeking dismissal prior to the time they filed their principal brief. Had the McKinneys been prejudiced by the failure of the appellants to proceed at a faster pace, it was incumbent upon the McKinneys to seek relief in a timely manner.

Under the facts and circumstances presented in the record, the court can not say that the failure of the Andersens to strictly comply with the requirements of the rules and

---

[11] *Andersen v. Bessemer City*, 470 U.S. 564, 573 (1985).

General Order 38 was sufficiently egregious to warrant dismissal of the appeal. Indeed, dismissal would likely be an abuse of discretion.[12]

B. *Possessory Interests*.

The order of the bankruptcy court was very narrow: (1) it authorized the trustee to abandon real and personal property as being of inconsequential value and benefit to the estate,[13] a ruling that is not challenged on appeal; and (2) granted to the parties it determined had established a *prima facie* right to immediate possession. The bankruptcy court specifically declined to address or rule on any issue of ownership or any other rights of the parties under otherwise applicable nonbankruptcy law as to interests in the property or as among the various parties. The transcript of the May 14, 2004, hearing indicates that this was specifically requested by the Andersens. The relief the Andersens request on appeal is that this court remand the case to the bankruptcy court "with instructions to either clarify ownership of the property, OR to call a recess in the proceedings until the ownership interest can be settled in the state courts." (Capitalization in the original.) On the basis of the record before it, this court can do neither.[14]

The initial issue before the bankruptcy court was limited: were the interests of the estate in the real and personal property of inconsequential value and benefit to the estate. Once the bankruptcy court decided that condition existed, it properly granted the motion of the trustee and authorized abandonment of the property. Once abandoned, property is no longer property of the bankruptcy estate and ownership of the property reverts to the debtor, *nunc pro tunc* to the date of filing as if no bankruptcy had occurred.[15] Following abandonment, whoever has a possessory interest in the abandoned property reacquires that right.[16] In most cases the right to possession will also rest with the debtor; however, it

---

[12] *Ehrenberg v. California State University (In re Beachport Entertainment)* 396 F.3d 1083, 1087–88 (9th Cir. 2005).

[13] § 554(a).

[14] The other requests for relief involve matters that, as noted above, are not properly before the court on this appeal.

[15] *Catalano v. Commissioner of Internal Revenue*, 279 F.3d 682, 685 (9th Cir. 2002).

[16] *Dewsnup v. Timm (In re Dewsnup)*, 908 F.2d 588, 590 (10th Cir. 1991), a'ffd 510 U.S. 410 (1992).

is also recognized that in some cases the right of possession may be vested in some other person or entity, such as a creditor holding a security interest in that property.[17] In this case, the bankruptcy court found that the McKinneys and the Thornhills had established a *prima facie* right to possession of the property at issue in this appeal.

The primary thrust of the arguments advanced by the Andersens is that the bankruptcy court overlooked or ignored evidence that contradicted its findings. The gist of the Andersens' argument is that "the court should have accepted my evidence and version of the facts, not the other guys'." The Andersens misperceive the role of an appellate court in the judicial system. The function of an appellate court is to correct errors of law, not to re-weigh the evidence. Sitting as an appellate court, this court is bound by the findings of fact made by bankruptcy court unless the finding is unsupported by any evidence or the evidence is so lacking in weight that the court is left with a firm conviction that a mistake has been committed.[18]

Appellees have provided virtually no assistance to the court in deciding this issue. The Thornhills have not made an appearance. The McKinneys address three issues: (1) dismissal; (2) the propriety of the abandonment (an issue that was not raised by the Andersens on appeal); and (3) a request for attorney's fees. The issue of entitlement to possession is discussed in what is, at best, an elliptical manner. This placed the burden on the court to mine the record to identify the evidence supporting the decision of the bankruptcy court.

Thornhills. According to the Andersens the personal property falls within two categories: (1) that conveyed to Terry Andersen and John Baker by the Thornhills; and (2) that subsequently purchased by Recreational Properties A&B. The Andersens claim a right to both.

Addressing first the after-acquired property. The Andersens do not point to any evidence in the record that could possibly support a finding that they personally and individually have a possessory interest in the personal property asserted to be the property

---

[17] 5 RESNICK & SOMMER, COLLIER ON BANKRUPTCY, ¶554.02[3] (15th ed Rev. 2004).

[18] *Haeuser v. Department of Law*, 368 F.3d 1091, 1100 (9th Cir. 2004).

of Recreational Properties A & B, a partnership. The Recreational Properties partnership, not the Andersens, is the real party in interest with respect to this property and it is not a party to this appeal. The Andersons lack prudential standing,[19] and, as noted above, may not in any event represent the interests of the partnership be fore this court.

The Andersons argue that the Thornhills conveyed the other personal property to Terry Andersen and John Baker free and clear of any encumbrances under a Bill of Sale. Granted, the Bill of Sale does transfer title to Andersen and Baker free of any encumbrances. What the Andersens overlook is that the evidence in the record also established that as a part of the transaction, Andersen and Baker granted a security interest to the Thornhills as security for part of the purchase price. While it is not clear that the security interest remained perfected as to third parties (the UCC-1 was filed in 1996, well beyond the 5-year life under IC §28-9-515), perfection is not required for the security interest to be effective between the debtor (Andersen and Baker) and the creditor (the Thornhills).[20] The record is also clear that a default existed with respect to the obligation secured by the security agreement between Andersen/Baker and the Thornhills. As between the Andersens and the Thornhills, the bankruptcy court did not clearly err in determining that the Thornhills had established a *prima facie* right to possession superior to that of the Andersens.[21]

McKinneys. Reduced to its essential terms, the argument of the Andersens is that the note and mortgage held by the McKinneys are void and provide no basis for a possessory interest in the real property, fixtures and improvements. That argument, on the record in this appeal, fails. First, the Andersens are not arguing that they are entitled to possession, but that Recreational Properties A & B, a partnership, is the person entitled to possession. Therefore, as with the personal property the Andersens claim is owned by Recreational Properties, the Andersens lack prudential standing to pursue that claim.

---

[19] *Dunmore v. United States, supra.*

[20] IC §28-9-201(a).

[21] *See* IC §28-9-609.

Even if the Andersens had sufficient standing, the result would not change. The bankruptcy court had before it a final judgment of foreclosure entered by the Idaho courts and a Sheriff's Deed issued after a foreclosure sale, which, by its very terms, granted possession of the real property to the McKinneys. The argument that the bankruptcy court erred in ignoring evidence establishing that the McKinneys' interest was a partnership, not an ownership, interest in the property is not well taken. Not only did the bankruptcy not err in disregarding this evidence, it would have committed error if it had.

To consider the evidence submitted by the Andersens would have required the bankruptcy court to look behind and determine the validity of the Sheriff's Deed, the foreclosure sale, and the foreclosure judgment of the Idaho courts on which they were based. To do so would be directly contrary to the *Rooker–Feldman* doctrine.[22] Under *Rooker–Feldman*, federal courts, other than the U.S. Supreme Court, lack subject matter jurisdiction over a suit that is a *de facto* appeal from a state court judgment.[23]

The bankruptcy court did not clearly err in finding that the McKinneys had established a *prima facie* right to possession of the real property, fixtures and improvements.

To the extent that the Andersens assert that the Thornhills do not have a valid security interest in the personal property, the Andersens may raise that issue and litigate it under otherwise applicable nonbankruptcy law in the Idaho courts. To the extent that the Andersens can establish under otherwise applicable nonbankrupcy law that the foreclosure proceedings were invalid or that the interest of the McKinneys in the real property is something other than the McKinneys claim, the Andersens are also free to raise those issues in the Idaho state courts. Once the bankruptcy court determined that the property of inconsequential value or benefit to the bankruptcy estate and authorized its abandonment by the trustee, the bankruptcy estate no longer had any interest in the property and the controversy as to ownership of the abandoned property did not arise under, arise in, or relate to a proceeding under title 11. Any basis for jurisdiction under 28 U.S.C. §1334 with

---

[22] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[23] *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003).

respect to the abandoned property was extinguished.[24] Any further controversies concerning the property abandoned, or interests in that property, are governed by otherwise applicable nonbankruptcy law. In the absence of some basis for invoking the jurisdiction of federal courts, other than bankruptcy, these controversies must be adjudicated in the state courts.

C. *Attorney's Fees.*

The McKinneys request an award of attorney's fees and costs under Idaho law. The award of attorney's fees on an appeal from the bankruptcy court to the district court is governed by Rule 8020 and must be made in accordance with the procedures set out in that rule.[25] Including a request for attorney's fees in the principal brief does not comply with the requirement of Rule 8020. The request for attorneys is denied.

## CONCLUSION

Based on the foregoing, the judgment of the bankruptcy court is AFFIRMED.

IT IS FURTHER ORDERED THAT the request of Everett W. and Ardis McKinney for attorney's fees is DENIED.

The Clerk of the Court to enter a final judgment under Rule 8016(a).

Dated May 19, 2005

                                          s/ Ralph R. Beistline
                                          RALPH R. BEISTLINE
                                          United States District Judge

---

[24] *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir. 1990); *Central Transport, Inc. v. Village of Hodgkins (In re Hall's Motor Transit Co.)*, 889 F.2d 520, 522 (3rd Cir. 1989); *ELSCINT, Inc. v. First Wisconsin Financial Corp. (Matter of Xonics, Inc.)*, 813 F.2d 127, 131 (7th Cir. 1987); 5 RESNICK & SOMMER, COLLIER ON BANKRUPTCY, ¶554.02[3] (15th ed Rev. 2004); *cf. Libby, McNeil and Libby v. City National Bank*, 592 F.2d 504, 510–11 (9th Cir. 1978).

[25] *Tanzi v. Comerica Bank – California (In re Tanzi)*, 297 B.R. 607 (9th Cir. BAP 2003); *see Higgins v. Vortx Fishing Systems, Inc.*, 379 F.3d 701, 709 (9th Cir 2004) (applying FED. R. APP. P. 38).